LEIFITELE SINAPATI SOTOA and
MEMBERS OF THE SOTOA FAMILY, Appellants

v.

SOTOA S. SAVALI and MEMBERS OF THE
SOTOA FAMILY, Appellees

[In the matter of the Matai Title "SOTOA"
in the Village of Ta'u]

High Court of American Samoa
Appellate Division

AP No. 20-86

November 11, 1987

Before REES, Chief Justice, KRUSE, Associate Justice, KING*, Acting Associate Justice, and TUIAFONO, Associate Judge

Counsel: For Appellants, Charles Ala'ilima
For Appellees, Tau'ese Sunia

PER CURIAM:

This is an appeal from the trial court's refusal to remove Sotoa So'oso'oali'i Savali from the title Sotoa.

---

* Honorable Samuel P. King, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

The dispute began shortly after the death of the previous titleholder, Sotoa Leota, in 1982. Appellant Sinapati Sotoa, a nephew of Leota and a son of the Sotoa who preceded Leota, attempted to register the title in his own name. Two brothers of Sinapati filed oppositions, each claiming that he had the right to hold the title. Appellee So'oso'oali'i Savali also filed an opposition. The Court held that Savali prevailed on three of the four statutory criteria (hereditary right; forcefulness, character, and personality; and value to the family, village, and country) and therefore was entitled to be Sotoa.

The trial court judgment was announced in July of 1984. An appeal by Sinapati was dismissed in February of 1985 because it had been filed after the statutory deadline. In April of 1985 Sotoa Savali attempted to convene a family meeting but called it off when various of Sinapati's supporters told him they would be unable to attend. In August of 1985 Sinapati and his supporters began circulating petitions for the removal of Sotoa Savali from the title. Those petitions culminated in this case.

Sinapati and his supporters claim that the title should be removed from Sotoa because he has not moved to the village of Ta'u which is the historic seat of the Sotoa family; has not built a family guest house as he promised to do when he was seeking the title; continued to hold his former title Muasau for some months after he was awarded the Sotoa title; has not had a saofa'i, and has offended members of the family and of the village council by using the Sotoa title prior to his saofa'i; and has failed to unite the family or gain the support of the Ta'u village council.

Sotoa Savali and his supporters respond, with respect to his failure to move to Ta'u, that almost all the members of the Sotoa family (including the leaders on both sides of the current dispute) are now employed on the island of Tutuila and return to Ta'u only on ceremonial occasions. Sotoa Savali gave up the Muasau title a few months after the trial court's judgment in this case, and was not obliged to give it up until at least after that judgment was confirmed on appeal. With respect to the other charges, appellees respond that Sotoa Savali has been trying to organize the family and assume the other functions of the Sotoa for two

93

years, has been prevented from doing so by the obstructionist tactics of the appellants, and still intends to do so once this litigation is over.

The trial court agreed with Sotoa Savali and denied the petition to remove the title. We also agree, but with one important reservation.

The record reflects that from the moment of the judgment awarding the title to Sotoa Savali, the loser and his supporters did everything they could to prevent the reunification of the family. They resisted every attempt by Sotoa Savali to meet with the family with a view toward holding a saofa'i at which he would formally assume the Sotoa title in accordance with Samoan custom; they went even further and held their own saofa'i for the losing candidate, Sinapati, in direct violation of a court order.

The appellants' claim that Sinapati himself had no wish to undergo a saofa'i, but did so only because the village council ordered the Sotoa family to produce a Sotoa within three weeks, rings hollow. The record before us reflects that this directive was issued by a minority of the village council, consisting entirely of persons who had supported Sinapati and opposed Sotoa Savali all along. The record also reflects that since 1982 the Sotoa family has never reached the broad consensus that would traditionally have been a prerequisite for a saofa'i. In any case there was no excuse for holding a saofa'i for a person whose legal right to hold the Sotoa title had recently been tried and found wanting, much less for holding such a ceremony in direct violation of a court order.

For the appellants to prevail in this action would not only be unfair to the lawful Sotoa titleholder and the family members who supported him; it would also be corrosive of the rule of law. This Court has become all too familiar with the contention that a law enacted by the Fono can be violated or ignored whenever the person who does not like it claims that the law is contrary to custom or tradition. One instance of this phenomenon is the belief that a single title can be simultaneously occupied by a "court-selected matai" and a rival "family-selected matai." The idea is apparently that the former has the right to use the matai title on his resumé while the latter

94

possesses the power and authority traditionally pertaining to the title. It is currently popular. a_ a last resort among losers in matai title cases who wish to avoid or postpone the family reconciliation contemplated by law and custom alike. It ignores not only orders of the Court and statutes enacted by the Fono, but also (by designating the losing candidate's supporters as "the family") the rights and feelings of those family members who supported the winning candidate or who were willing to live with the outcome of the statutory process.

To cite the most obvious example of the inconsistency of this idea with law and custom, the territorial statutes prohibit anyone but the legally registered matai from disposing of communal lands or authorizing improvements that require permits from the government. Obviously, the law contemplates that this person will be none other than the person who actually presides at family meetings and consults with the family members affected by the decisions.

In fact, the statutes concerning matai titles and other customary matters represent the best effort of the Fono --- whose membership includes many of the most important traditional leaders of Tutuila and Manu'a --- to incorporate custom into written law and to provide procedures for its preservation and enforcement. When the Court attempts to resolve a dispute among family members about who should hold a matai title, it is doing its best to apply the criteria that the Fono believes the family would have applied if there were no external means of dispute resolution.

Perhaps the Fono and the Court have been wrong; if so, the law can be changed. We note, however, that the decisions most frequently attacked as contrary to fa'a Samoa are in cases such as this one where a close relative of the previous titleholder has been passed over in favor of a candidate from a different side of the family. This is not contrary to Samoan customs and traditions; if anything, those who regard an important matai title as the personal property of a small group within the family are guilty of being unfaithful to tradition. In any case, on the present record we cannot conclude that the trial court erred in refusing to remove the Sotoa title from Sotoa Savali.

95

The trial court did note, however, that Sotoa Savali had not yet shown the "forcefulness" with which he was credited by the judges who held that he was best qualified to be Sotoa. Even under the difficult circumstances of this case we believe he has yet to demonstrate his willingness and ability to lead the family. We therefore modify the judgment of the trial court as follows:

1) The petition will be denied insofar as it seeks the removal of the Sotoa title from Sotoa Savali.

2) Insofar as some petitioners may be genuinely concerned that Sotoa Savali has not yet complied with the traditional requisites for assumption of the Sotoa title, however, the petition has merit.

3) Sotoa Savali must therefore act with all deliberate speed to organize the family and to assume the Sotoa title in accordance with custom.

4) Sotoa is further directed to use his best efforts to effect a genuine reconciliation among all members of the family, including Sinapati and those who have supported him.

5) All parties to this action and all those acting in concert with them are enjoined from interfering in any way with the exercise by Sotoa Savali of the rights and functions appurtenant to the Sotoa title, and are further enjoined to co-operate with him insofar as their co-operation is a traditional prerequisite to the exercise of such rights and functions. This injunction includes but is not limited to an absolute prohibition of the use of the Sotoa title or of the exercise of any of its functions or perquisites by any other person.

6) The case is remanded to the trial court with instructions to hold a hearing in about six months to determine whether the parties have complied with this judgment and to take such further action as is appropriate at that time.

It is so ordered.